Filed Sept. 27, 1888.

———————◆———————

No. 14,299.

MARKLEY, SURVEYOR, *v.* RUDY ET AL.

DRAINAGE.—*Repair of Ditches.*—*County Surveyor.*—*Disqualification of, on Account of Interest, etc.*—*Statute Construed.*—A county surveyor has no power
to act, in the repair of ditches under the provisions of section 10 of the
drainage law of April 6th, 1885, where lands owned by him, or by persons related to him within the prohibited degrees of consanguinity, are
benefited by, and liable to assessment for, such repairs.   In such case
he should report his disability to the board of county commissioners,
who must appoint a deputy to act.   *Kelly* v. *Hocket,* 10 Ind. 299, overruled to the extent that it conflicts with this opinion.

SAME.—*Appeal from Surveyor's Assessment.*—*Separate Appeal.*—*What May be
Considered on Appeal.*—Under the provisions of section 10 of the drainage law of April 6th, 1885, any person feeling himself aggrieved may
separately appeal from any assessment made under that section, and on
such appeal the question as to the competency of the surveyor to make
the assessment, and all kindred questions, may be examined, either as
preliminary or incidental to the trial on its merits.

From the Wells Circuit Court.

*J. S. Dailey, L. Mock* and *A. Simmons,* for appellant.

*A. N. Martin* and *N. Burwell,* for appellees.

NIBLACK, C. J.—The Wells Circuit Court, at its September term, 1882, on the petition of Constant Ehle and others,
ordered the construction of a ditch within the county of
Wells for the purpose of drainage, and a ditch, since known
as the Ehle ditch, was constructed accordingly.

On the 12th day of September, 1887, Theodore Elling-
ham, who was the owner of several tracts of land which had
been benefited by, and had been assessed for, the construc-
tion of that ditch, gave a notice in writing to the appellant,
Gabriel T. Markley, who was then, and thereafter continued
to be, the surveyor of Wells county, requiring him to repair
the ditch and to restore it to its original dimensions.

The appellant thereupon proceeded to repair the ditch and,
as far as practicable, to restore it to its former condition, and
to certify the cost thereof, including his own *per diem* for
services, to the auditor of the county. To reimburse the
county treasury for the cost of this work, he further pro-
ceeded to make assessments against the lands assessed in the
first instance for the construction of the ditch, specifying the
name of the owner of each tract of land. In connection
with a considerable number of tracts of land belonging to
other persons, lands owned by Franklin Rudy, Daniel Shire,
Charles B. Evans and Aaron F. Cotton, respectively, were in
this way assessed to pay the cost of repairing the ditch. In
making these assessments, the appellant assumed to be gov-
erned by the provisions of section 10 of the drainage act of
1885. Acts of 1885, page 141.

Rudy, Shire, Evans and Cotton, the appellees here, sever-
ally appealed from the assessments made against their re-
spective lands to the circuit court, making the appellant
Markley, as the county surveyor, the defendant in all of their
appeals.

The appellant Markley, appearing in the circuit court,
moved to dismiss the appeal in each case because all the
other persons whose lands had been assessed had not either
joined in the appeal, or been notified, and thus afforded an
opportunity to join in it, but his motion in each case was
overruled.

The plaintiffs in these appeals then, in an effort to raise
the question of the appellant Markley's jurisdiction to make
the assessments appealed from, filed an affidavit in each case,

charging that he, the appellant, was, at the time the repairs and assessment were made, the owner of two of the tracts of land benefited and assessed for such repairs, and that his father, Jonathan Markley, was the owner, at the same time, of two of the other tracts of land in like manner assessed for repairing the ditch; that, by reason of these facts, he was incompetent either to make such repairs, or to make assessments against the lands benefited for the purpose of keeping the ditch in repair.

The four appeals were thereafter consolidated, and the causes, as thus consolidated, were submitted to the court for trial. The appellant Markley, to facilitate the trial, admitted in open court that he was, at the time the ditch was repaired, and still was, the owner of two of the tracts of land benefited and assessed as stated, and that his father was at the same time the owner of two of the other tracts similarly situated. The circuit court thereupon declined to hear further evidence, and to proceed further with the trial, and made a finding that the assessments in controversy were unlawful and void, and rendered a judgment annulling and setting aside the assessments; also, against the appellant personally for costs.

The assessments made against the lands benefited by the repairing of the ditch were, in their essential qualities, entirely several, and hence not in any sense joint assessments. While there may be some obscurity in certain respects in the provisions of section 10 of the act of 1885, above referred to, as to the scope and effect of, and as to the proper practice under, appeals to the circuit court, all the analogies lead us to hold that any person feeling himself aggrieved may separately appeal from an assessment made against his lands under that section. This view is impliedly confirmed by the provision that if more than one person shall appeal the cases shall be consolidated and tried together. Consequently, the motions to dismiss the appeals taken from the assessments in question were correctly overruled.

It is a fundamental rule in the administration of justice that no person can be judge in a cause in which he is interested. This rule applies to inferior tribunals, as well as to courts of general and appellate jurisdiction. This elementary principle has been so long and so universally recognized that it has become an accepted legal maxim. Broom Legal Maxims, 116.

It is also a general rule, nearly as well recognized, that no executive or administrative officer shall take official action in a matter involving the rights of others in which he is personally interested. There may be some minor exceptions to this general rule, resulting from some express or implied statutory enactment, or from the very necessity of the case, but, if so, that does not impair the force of the rule in its application to ordinary cases. Under our system of jurisprudence, provision is usually made for temporarily supplying the place of an executive or administrative officer in cases in which he is interested.

Section 5952, R. S. 1881, which constitutes a part of an original act providing for the election and prescribing the duties of county surveyors, enacts that " Such surveyor may appoint deputies; and whenever the services of the surveyor are required in a case where he is interested, the board of commissioners shall appoint a deputy to act."

The eleventh subdivision of section 240, R. S. 1881, declares that " When a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, consanguinity or affinity within the sixth degree, inclusive, by the civil law rules, or within the degree of second cousin, inclusive, shall be deemed to disqualify such person from acting, except by consent of parties."

The necessary deduction from these statutes, as well as from the general principles above announced, is, that the appellant was, on account of both personal interest and consanguinity, incompetent either to repair the ditch or to make assessments for the cost of repairing it. *Dawson* v. *Wells*, 3

Ind. 398 ; *High* v. *Big Creek Ditching Ass'n,* 44 Ind. 356; *Bradley* v. *City of Frankfort,* 99 Ind. 417.

When he received notice that the ditch was out of repair he should have reported the fact to the board of commissioners, informing them of his interest in the ditch, and have asked them to appoint a disinterested deputy to make the necessary repairs and assessments.

So far as the case of *Kelly* v. *Hocket,* 10 Ind. 299, is inconsistent with the general principles on which the appellant's incompetency is made to rest, it must be regarded as overruled.

Section 10 also provides that when an appeal is taken from an assessment, " Such appeal shall be tried by the court, without a jury, and the only question tried shall be to determine the costs of such repair and what amount thereof should be assessed against the appellant's lands."

It is claimed that, under this statutory provision, the appellees here were restrained from raising any question in the circuit court upon the appellant Markley's competency to make the assessments appealed from, and that, consequently, that court erred in entertaining the question of his competency.

Taking all the provisions of section 10 into consideration, there is, as we have intimated, some obscurity, and hence room for construction as to what ought, in certain contingencies, to be the proper practice in appeals from assessments made under it.

It has often been held that in all judicial, or *quasi* judicial, proceedings, a party is entitled to his " day in court" where either his person or estate is, or is liable to be, involved in the contest. This is necessary that such proceedings may be in due course of law, and hence is fundamentally essential to their validity. As a recurrence to section 10 will disclose, the surveyor is not required to give any notice to the persons to be affected by his proceedings until after the ditch has been repaired and the assessments to reimburse the county

treasury have been made. It is only through the medium of an appeal that a party feeling himself aggrieved can, in accordance with the provisions of said section 10, make any objection to the proceedings of the surveyor. From the very necessity of the case, therefore, the party appealing ought to be permitted to make every reasonable objection to the matters appealed from which the statute does not fairly and properly prohibit. The evident intention of section 10, *supra,* is to commit the question of the propriety of repairing a public ditch to the discretion and decision of the proper county surveyor, and to treat his decision in favor of the propriety of repairing it as final. We, consequently, construe the provision that upon the trial of an appeal the only question to be tried shall be to determine the costs of the repairs, and what amount of such costs should be assessed against the appellant's lands, to mean that upon the trial of the merits of the appeal the question of the propriety or necessity of repairing the ditch shall neither be reviewed nor taken into consideration, and that the investigation shall be confined to the amount which ought to be assessed against the lands of the appellant, leaving the question of the competency of the surveyor to make the assessments, and all kindred questions, open to examination as preliminary or incidental to the trial on the merits.

Applying this construction to the case before us, the circuit court did not err either in entertaining the question of the competency of the appellant Markley to make the assessments complained of, or in holding him to have been incompetent to make such assessments. Having been incompetent to make the assessments he assumed to make, judgment was rightly rendered against the appellant for the costs which the appellees in consequence incurred in the circuit court. *Wentworth* v. *Wyman,* 6 New Eng. Rep. 785.

As having a bearing on some of the questions here discussed, see the cases of *State, ex rel.,* v. *Johnson,* 105 Ind. 463; *Fries* v. *Brier,* 111 Ind. 65; *Weaver* v. *Templin,* 113

Ind. 298; *Davis* v. *Lake Shore, etc., R. W. Co.,* 114 Ind. 364; *Dunkle* v. *Herron, ante,* p. 470; *Johnson* v. *Lewis, ante,* p. 490.

The judgment is affirmed, with costs.

